

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 2 4 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COYOTE PORTABLE STORAGE, LLC, AND DESERT PORTABLE STORAGE, LLC, ) ) ) ) ) *Plaintiffs*, ) ) vs. ) ) PODS ENTERPRISES, INC., AS SUCCESSOR IN INTEREST TO PODS, INC. ) ) ) ) ) *Defendant*. ) ) | **TRIAL BY JURY DEMANDED**<br><br>CIVIL ACTION FILE NO. 1 09-CV-2001<br><br>BBM |

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

COME NOW Plaintiffs Coyote Portable Storage, LLC ("Coyote") and

Desert Portable Storage, LLC ("Desert") (collectively, "Plaintiffs" or

"Franchisees") and hereby state their Verified Complaint for Declaratory and

Injunctive Relief against PODS Enterprises, Inc., as successor in interest to PODS,

Inc. ("Defendant" or "PODS"), as follows:

1

## PARTIES AND JURISDICTION

### 1.

Plaintiff Coyote is a limited liability company organized and existing under the laws of the State of Delaware. Coyote maintains its principal place of business at 3330 Cumberland Blvd., Suite 600, Atlanta, Georgia 30339 and is a resident of the State of Georgia. It does business in, and maintains operations in Florida and Arizona.

### 2.

Plaintiff Desert is a limited liability company organized and existing under the laws of the State of Delaware. Desert maintains its principal place of business at 3330 Cumberland Blvd., Suite 600, Atlanta, Georgia 30339 and is a resident of the State of Georgia. It does business in, and maintains operations in Florida and Nevada.

### 3.

Defendant is a corporation organized and existing under the laws of the State of Florida, with a registered agent in this State.

2055621-2 11209.0002000

4.

Defendant has generally conducted business in the State of Georgia and specifically conducted business in the matters at issue herein such that this Court has personal jurisdiction over Defendant.

5.

This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of costs and interest, and all Plaintiffs are diverse from the Defendant.

6.

Venue is proper in this Court under 28 U.S.C. § 1391(a)(1) and (2).

7.

All conditions precedent to the filing of this suit have been met, waived, or explicitly excused.

## FACTUAL BACKGROUND

### The PODS System: An Overview

8.

PODS is a franchisor of storage and moving businesses featuring the use of portable, self-contained storage units. PODS is an acronym for Portable On Demand Storage, a business concept of delivering a storage unit (the "Container")

3

by truck to the customer's location, lowering the Container hydraulically onto the customer's property and leaving it there to be packed by the customer.

9.

A PODS franchise includes the use of specialized equipment specifically designed for lifting and transporting the Containers (the "PODzilla"), which is sold to the franchisee by PODS.

10.

Once the Container is packed, the customer can either leave it at their site for storage or simply ask that it be picked up and taken to a PODS warehouse for storage until needed. Customers who wish to maintain their PODS unit at a PODS warehouse pay a monthly rental fee for storage space.

11.

These storage units can also be moved to a location in any state where PODS franchises have operations through the PODS cross-country moving program.

## The Franchise Agreements

12.

On or about September 29, 2003, Coyote and PODS entered into a Franchise Agreement and Addendum to the Franchise Agreement (collectively, the "Coyote

4

Franchise Agreement") pursuant to which Coyote acquired the rights to and did open a PODS franchise in Phoenix, Arizona. True and correct copies of the Coyote Franchise Agreement are attached hereto as Exhibit A.

<div align="center">13.</div>

On or about September 29, 2003, Desert and PODS entered into a Franchise Agreement and Addendum to the Franchise Agreement (collectively, the "Desert Franchise Agreement") pursuant to which Desert acquired the rights to and did open a PODS franchise in Las Vegas, Nevada. True and correct copies of the Desert Franchise Agreement are attached hereto as Exhibit B.

<div align="center">14.</div>

The Coyote and Desert Franchise Agreements are identical in all material respects.

<div align="center">**The Franchise Agreement Addendum**</div>

<div align="center">15.</div>

In June 2007, Coyote and PODS entered into another Addendum to the Franchise Agreement (the "Coyote Addendum"). A true and correct copy of the Coyote Addendum is attached hereto as Exhibit C.

<div align="center">5</div>

16.

In June 2007, Desert and PODS also entered into another Addendum to the Franchise Agreement (the "Desert Addendum"). A true and correct copy of the Desert Addendum is attached hereto as Exhibit D. Exhibits C and D are referred to herein collectively as the "Addenda."

17.

The Coyote and Desert Addenda concern a potential extension of the time for PODS to exercise its option to purchase the Coyote and Desert franchises (the "Purchase Option").

18.

Section 1 of the Coyote and Desert Addenda provides in relevant part as follows:

[S]ubject to the full compliance with each of the performance commitments set forth in 2 below, Section 19.6 is amended such that Franchisor's option to purchase the assets or ownership interests of the Franchisee shall not be exercisable until after April 30, 2011, rather than 60 months after the Opening Date.

6

19.

Section 2 of the Coyote and Desert Addenda provides in relevant part as follows:

Franchisee has agreed to meet the following performance commitments through April 30, 2011 in exchange for Franchisor's Agreement to extend the period before which the purchase option may be exercised.

20.

Under the terms of the Addenda, if Coyote and Desert each respectively satisfied their performance commitments, then the date on which PODS could first exercise its right to purchase the respective franchise would be extended. If Coyote and Desert failed to satisfy their respective performance commitments, then they would not receive the extension of the Purchase Option.

21.

Further, as consideration for the Addenda, Desert and Coyote gave PODS a release of claims occurring up to the date of the Addenda and ratified and confirmed the enforceability of the Franchise Agreement.

7

22.

At all times material hereto, from before the Addenda were entered to the present, PODS never intended to honor the Addenda, but rather planned to use them as a pretext to either enrich itself at its Franchisees' expense and to deprive them of their Franchises in violation of the Franchise Agreements.

23.

In or about March 2009, Desert and Coyote informed PODS that they would not comply with the performance commitments and, thus, would not receive any extensions of the Purchase Options.

24.

Under these circumstances, the Addenda do not require Desert and Coyote to purchase Containers from PODS or pay any fee in lieu of such purchases to comply with the performance commitments. Rather, the consequence of Desert's and Coyote's decision is to not receive the extension.

25.

Nevertheless, even though Desert and Coyote chose not to comply with the performance commitments and, thus, did not receive the extensions of the Purchase Option, PODS has taken the position (contrary to the parties' intent and the language of the Addenda) that Desert and Coyote are still obligated to pay a fee in

8

lieu of purchasing Containers. PODS has nevertheless and despite this explicit violation of the express terms of the agreements between the parties held out that it was complying with the terms of the agreements.

26.

In June, 2009, PODS sent Coyote and Desert invoices stating that they owed $78,600.00 and $43,800.00 respectively under the Addenda, which represents the payment in lieu of purchasing Containers under the Addenda.

27.

On or about July 10, 2009, PODS sent Coyote and Desert correspondence (1) purporting to declare that Desert and Coyote had failed to make payment of $300 per Container in lieu of purchasing Containers under the Addenda; (2) as a result of the alleged "failure to pay," purporting to declare that Coyote and Desert no longer qualified for a "Satisfactory" performance rating; (3) as a result of the downgraded performance rating, increasing the royalty rate charged to Desert and Coyote from 6% to 10%; and (4) invoking Section 17.3 of the Franchise Agreement. A true and correct copy of the correspondence from PODS is attached hereto as Exhibit E.

9

28.

Section 17.3 of the Franchise Agreement provides for a first notice to the franchisee of any breach of the Franchise Agreement, second notice and $5,000 fine and/or termination of the Franchise Agreement, and final notice resulting in the automatic termination of the franchise.

29.

Before PODS sent their letter to Desert and Coyote, PODS knew that Desert and Coyote denied that they had any remaining obligation to comply with the performance commitments under the Addenda. Nevertheless, PODS unilaterally downgraded the performance rating for Desert and Coyote to below "Satisfactory" based solely on the performance commitments set forth in the Addenda, which are no longer applicable.

30.

On or about July 17, 2009, Desert and Coyote sent PODS a letter reiterating that they had previously informed PODS that they would not be complying with the performance commitments and, thus, would not be receiving the extension of the time for PODS to exercise the Purchase Option, and further stating that, as a result, Desert and Coyote were not be required to comply with the performance

commitments. A true and correct copy of the letter to PODS is attached hereto as Exhibit F.

31.

In their letter to PODS, Desert and Coyote also address PODS's bad faith conduct *inter alia* in wrongfully and fraudulently retaining more than the royalty fee set forth in the Franchise Agreement.

32.

PODS's wrongful over-charging of royalties is the subject of a prior, pending action in this Court styled: *Coyote Portable Storage, LLC v. PODS Enterprises, Inc.*, Civil Action No. 1:09-CV-1152-BBM. The additional wrongful conduct by PODS described herein occurred after the filing of the prior pending action, and appears to be related to the filing of the prior, pending action.

33.

PODS's downgrading of the performance rating for Desert and Coyote to no longer "Satisfactory," demand for $300 per Container under the Addenda, increase of the royalty rate from 6% to 10%, and imposition of a $5,000 fine is in retaliation for the pending litigation.

34.

Coyote and Desert meet all the criteria for a performance rating of "Satisfactory" or higher. The only reason asserted by PODS for downgrading their performance rating is the alleged breach of the Addenda. As demonstrated above, that cannot be a sufficient basis to downgrade their performance rating.

35.

Under the Franchise Agreement, the base Royalty Rate is 8%. In addition, Coyote and Desert are entitled to a 2% rebate of royalties paid, so long as they continue to have a "Satisfactory" performance rating.

36.

Specifically, § 6.4 of both the Coyote and Desert Franchise Agreements provides as follows:

> After the 3rd Anniversary of the Commencement of opening the Franchised Business, [PODS] will rebate 2% of your Net Sales during each calendar quarter, within 60 days of each calendar quarter-end, if we determine that you have received a Satisfactory or Excellent Performance Rating for your most recent audit. If you have less than a Satisfactory Performance Rating, we will audit you again within the following 6-month period. If you receive less than a Satisfactory

12

Performance Rating from the second audit, you will not be reviewed again until 6 months after the date of the second audit.

37.

Coyote reached the third anniversary of the commencement of its opening on January 1, 2007 and received an Excellent Performance Rating for the audit conducted November 13, 2007.

38.

Desert reached the third anniversary of the commencement of its opening on April 12, 2007 and received an Excellent Performance Rating for the audit conducted November 14, 2007.

39.

Neither Coyote nor Desert has received any payment from PODS constituting a rebate of royalties paid to PODS as required under § 6.4.

40.

PODS has not complied with the demands of Coyote and Desert for the payment of a rebate of royalties, and, therefore, Coyote and Desert filed the prior pending action.

13

41.

Instead of exercising the purchase option and paying a fair price for the Coyote and Desert franchises pursuant to its rights under the terms of the Franchise Agreements, PODS is artificially, and through pretense motivated by retaliation, attempting to invoke Section 17.3 of the Franchise Agreement to manufacture an automatic termination of Plaintiffs' franchises, which would result in the acquisition by PODS of the Coyote and Desert franchises for a nominal amount.

42.

Under Section 17.3 of the Franchise Agreement, Coyote and Desert have thirty (30) days to cure any breach of the Franchise Agreement. The failure to cure any breach within thirty (30) days results in a fine of up to $5,000.00 and/or the termination of the Franchise Agreement, which would allow PODS to purchase the franchises for nominal amounts.

43.

PODS has already delivered its purported default notice dated July 10, 2009, and invoked the thirty (30) day cure period set forth in Section 17.3.

44.

Although Coyote and Desert have not, in fact, breached the Franchise Agreement, PODS is attempting to manufacture a default to terminate their

14

Franchise Agreement and therefore deprive them of their property for purely nominal amounts.

<div align="center">45.</div>

On information and belief, PODS has willfully and maliciously engaged in the same or substantially the same misconduct with other franchisees.

<div align="center">

**COUNT I**
**DECLARATORY RELIEF**

</div>

<div align="center">46.</div>

Plaintiffs incorporate the allegations contained in the previous paragraphs, as if fully set forth herein.

<div align="center">47.</div>

Declaratory relief is proper in this case pursuant to 28 U.S.C. § 2201 because Plaintiffs have a bona fide, actual, present and practical need for the relief sought herein.

<div align="center">48.</div>

A dispute exists (whether real or trumped up by Defendant) between Plaintiffs and Defendant regarding the rights and obligations of the respective parties under the Coyote Addendum and the Desert Addendum.

<div align="center">15</div>

49.

Plaintiffs are entitled to a declaration that they are not in breach of the Addenda.

50.

Plaintiffs are further entitled to a declaration as to the proper construction of the Addenda, to-wit: that Coyote's and Desert's decisions not to fully comply with the performance commitments in Section 2 of the respective Addenda would only result in Coyote and Desert not receiving an extension for PODS to exercise the Purchase Option with no further obligation to comply with the "Performance Criteria."

51.

Plaintiffs are further entitled to a declaration that they do not owe PODS any amounts under the Addenda.

52.

Plaintiffs are further entitled to a declaration that PODS cannot terminate their respective Franchise Agreements for failure to pay amounts claimed by PODS to be owed under the Addenda, because no such amounts are in fact owed.

2055621-2 11209.0002000

53.

Plaintiffs are further entitled to a declaration that PODS cannot downgrade their performance rating lower than "Satisfactory" based on the failure to pay amounts under the Addenda, because no such amounts are owed.

54.

Plaintiffs are further entitled to a declaration that PODS cannot raise the base Royalty Rate under the Franchise Agreement to 10%, because Plaintiffs' performance rating remains "Satisfactory" or better.

55.

Such declaration would resolve a genuine and justiciable dispute between Plaintiffs and Defendant and would clarify and settle the proper calculation of royalties going forward, as well as avoiding the termination of the Plaintiffs' Franchise Agreements seemingly planned by Defendant.  Such declarations would also further terminate and afford relief from the uncertainty and controversy giving rise to this proceeding.

## COUNT TWO
## INJUNCTIVE RELIEF

56.

Plaintiffs incorporate the allegations contained in the previous paragraphs, as if fully set forth herein.

57.

PODS wrongfully asserts that Coyote and Desert breached their respective Franchise Agreements. PODS's conduct, as described above, is clearly an attempt to use the default provisions of the Franchise Agreement to retaliate for Plaintiffs having filed suit against PODS and to try to obtain the Coyote and Desert franchises for a nominal amount.

58.

Moreover, most payments by customers are made directly to PODS and not to Coyote and Desert. Accordingly, even before it improperly tries to terminate the Franchise Agreements, PODS unilateral and wrongful declaration that Plaintiffs are in breach of the Franchise Agreements affords PODS the ability to withhold a greater percentage of revenue from Plaintiffs; effectively allowing Defendant to unilaterally engage in self-help (*i.e.*, helping itself to Plaintiffs' money) without any legal justification or judicial resolution of this dispute.

59.

PODS's conduct in attempting to acquire the Coyote and Desert franchises by wrongfully alleging a breach of the Franchise Agreement and Addenda will also cause Plaintiffs irreparable harm for which there is no adequate remedy at law, because the Franchise Agreement ultimately allows for automatic termination for

18

2055621-2 11209.0002000

the failure to cure a breach, and because Plaintiffs have no other remedy at law in which to stop PODS's illegal self-help.

60.

PODS's wrongful conduct is contrary to the plain language of the Franchise Agreement and the Addenda, and, thus, Plaintiffs have a substantial likelihood of success on the merits.

61.

The contract dispute between Plaintiffs and Defendant is a private commercial dispute, and the grant of the injunction will serve the public interest by eliminating any confusion arising from the parties' competing claims to the ownership of the Coyote and Desert franchises.  The grant of immediate and preliminary injunctive relief would preserve the status quo between the parties and allow the dispute to be resolved through the claim for declaratory judgment.

62.

Plaintiffs have been damaged and will continue to be damaged by PODS's conduct in improperly declaring defaults under the Franchise Agreement and Addenda, improperly downgrading Plaintiffs performance rating, wrongfully increasing royalty rates, imposing penalties, and ultimately terminating the Franchise Agreement, and as such, PODS should be required to terminate its

19

improper, bad faith, and wrongful conduct.    Thus, the irreparable injury to Plaintiffs in the absence of an injunction outweighs any harm to Defendant from the grant of injunctive relief.

<div align="center">63.</div>

Specifically, Plaintiffs are entitled to an order

(1)    enjoining PODS from attempting to collect $300 per container under the Addenda;

(2)    enjoining PODS from downgrading Plaintiffs' performance rating to less than "Satisfactory" and immediately restoring Plaintiffs' ratings to "Excellent" or "Satisfactory," as it existed immediately prior to the July 10, 2009 downgrading;

(3)    enjoining and restraining PODS from imposing a 10% royalty rate on Plaintiffs and ordering PODS to charge a 6% royalty fee as required by the Franchise Agreement; and

(4)    enjoining PODS from charging a $5,000 penalty and/or terminating the Desert and Coyote Franchise Agreement.

<div align="center">64.</div>

Insofar as all royalty fees are concerned, in the alternative, Plaintiffs are entitled to an order imposing a constructive trust on all funds in excess of the

<div align="center">20</div>

ordinary 6% royalty fee received and to be received by PODS as a result of orders made through the Coyote or Desert franchises until a determination has been made as to the proper calculation of royalty fees under the Franchise Agreements.

## COUNT THREE
## BREACH OF CONTRACT

### 65.

Plaintiffs incorporate the allegations contained in the previous paragraphs, as if fully set forth herein.

### 66.

Plaintiffs fulfilled their obligations or their performance was excused without penalty or otherwise not required under the Franchise Agreements and the Addenda.

21

67.

PODS breached its obligations under the Franchise Agreements by wrongfully downgrading the performance rating of Coyote and Desert to less than "Satisfactory," and improperly sending Coyote and Desert a notice of breach requiring Coyote and Desert to perform obligations not required by the Franchise Agreement or Addenda or risk termination of their Franchise Agreement.

68.

PODS further breached its obligations under the Franchise Agreements by purporting to increase Plaintiffs' effective royalty rate from 6% to 10% for its own benefit, in violation of the terms of the contracts.

69.

Plaintiffs have been damaged by PODS's breaches of the respective contracts in a principal amount to be proven at trial, plus additional actual, incidental, and consequential damages to be proven at trial, and are entitled to recover all of those amounts.

2055621-2 11209.0002000

## COUNT FOUR
## BREACH OF IMPLIED CONVENANT OF GOOD FAITH
## AND FAIR DEALING

### 70.

Plaintiffs incorporate the allegations contained in the previous paragraphs, as if fully set forth herein.

### 71.

Plaintiffs have made repeated demands to PODS for the return of their performance rating to "Satisfactory," the return of their effective royalty rate to 6%, and the discontinuance of PODS's attempts to impose charges for Containers that Plaintiffs are not required to purchase or pay for under the Addenda.

### 72.

While purporting to comply with the stated provisions of the contracts between the parties, PODS has *de facto* breached the terms of the agreements and left Plaintiffs without the benefits of their bargains by refusing to return Plaintiffs' performance rating to "Satisfactory," refusing to return Plaintiffs' effective royalty rate to 6%, and continuing to attempt to impose charges for Containers that Plaintiffs are not required to purchase or pay for under the Addenda.

23

73.

Each of these acts are in violation of the express terms of the Franchise Agreements and Addenda, as outlined above.

74.

Thus, PODS has willfully and maliciously refused to return Plaintiffs' performance status to "Satisfactory;" has refused to return Plaintiffs' effective royalty rate to 6%; and has continued to assert its right to payments for containers that Plaintiffs were not required to make under the Addenda on threat of termination of Plaintiffs' Franchise Agreements.

75.

PODS has no legal basis for its actions.

76.

Further, by wrongfully declaring breaches of the Addenda and Franchise Agreement where none exist in retaliation for the prior pending action, when it has no legal basis on which to do so, PODS is acting in bad faith.

77.

By wrongfully downgrading Coyote and Desert's performance rating, increasing their royalty rates, imposing penalties, and attempting to terminate the Franchise Agreement in order to obtain the Coyote and Desert franchises for a

24

nominal amount, contrary to the terms of the Franchise Agreement and Addenda, when it has no legal basis on which to do so, PODS is in breach of the implied covenant of good faith and fair dealing of the Franchise Agreements and Addenda.

78.

As a result of PODS's consistent, unrelenting bad faith, and the actions that exemplified that bad faith, Plaintiffs have been damaged in a principal amount to be proven at trial, plus additional actual, incidental, and consequential damages to be proven at trial, and are entitled to recover all of those amounts.

## COUNT FIVE
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201 ET SEQ.

79.

Plaintiffs incorporate the allegations contained in the previous paragraphs, as if fully set forth herein.

80.

PODS's conduct, as described above, constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), which makes "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" a violation thereunder.

2055621-2 11209.0002000

81.

PODS's conduct is punishable under the FDUTPA because PODS maintains its corporate headquarters in the State of Florida.

82.

Specifically, PODS's conduct in falsely declaring Coyote and Desert in breach of the Franchise Agreement, improperly downgrading their performance rating and increasing their royalty rate, and taking steps to terminate the Franchise Agreement in order to obtain the Coyote and Desert franchises for a nominal amount, while knowing that Plaintiffs were not in breach of the Addenda or Franchise Agreement, constitutes an "unconscionable act or practice" and/or an "unfair or deceptive act or practice" within the meaning of the FDUTPA.

83.

Moreover, PODS's conduct in wrongfully increasing the percentage it will retain as royalties contrary to the terms of the Franchise Agreements constitutes a violation of 16 C.F.R. § 436.9(i), a rule promulgated by the FTC making it a violation for a franchise seller to "[f]ail to return any funds or deposits in accordance with any conditions disclosed in the franchisor's disclosure document, franchise agreement, or any related document," which, in turn, constitutes a violation of the FDUTPA.

84.

In addition, PODS deliberately and deceptively represented to Plaintiffs that it would abide by the terms of the Addenda in order to induce their reliance, planning from the start to use them as a pretext to either enrich itself at its Franchisees' expense, or to deprive them of their Franchises in violation of the Franchise Agreements.

85.

These deceptive acts in the course of commerce are *per se* violations of the FDUTPA.

86.

Plaintiffs have been damaged by PODS's violations of the FDUTPA in a principal amount to be proven at trial, plus additional actual, incidental and consequential damages to be proven at trial, and are entitled to recover all of those amounts.

## COUNT SIX
## ATTORNEYS' FEES

87.

Plaintiffs incorporate the allegations contained in the previous paragraphs as if fully set forth herein.

88.

Pursuant to § 22.5 of the Franchise Agreements, the prevailing party in any action under the agreements is entitled to reimbursement of all of its attorney's fees and related costs including reasonable accounting, paralegal, expert witness fees and costs from the non-prevailing party if so ordered by the courts.

89.

Plaintiffs are also entitled to recover their attorneys' fees pursuant to the provisions of the FDUTPA.

90.

Accordingly, Plaintiffs are entitled to an award of attorneys' fees against Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiffs request immediate, preliminary and permanent injunctive relief and a declaratory judgment and seek the following relief:

(a)     The Court enter judgment for Plaintiffs and against Defendant;

(b)     the Court to enter a declaratory judgment for Plaintiffs and against Defendant stating *inter alia* that Plaintiffs are not in breach of the Addenda to the Franchise Agreement;

(c)     the Court to enter an Order (1) enjoining PODS from attempting to collect $300 per container under the Addenda;

28

(2) enjoining PODS from downgrading Plaintiffs' performance rating to less than "Satisfactory" and immediately restoring Plaintiffs' ratings to "Excellent" or "Satisfactory," as they existed immediately prior to the July 10, 2009 downgrading; (3) enjoining and restraining PODS from imposing a 10% royalty rate on Plaintiffs and ordering PODS to charge a 6% royalty fee as required by the Franchise Agreement; and (4) enjoining PODS from charging a $5,000 penalty and/or terminating the Desert and Coyote Franchise Agreement Franchise Agreements.

(d)     In the alternative, insofar as all royalty fees are concerned, imposing a constructive trust on funds received by PODS as a result of orders made through the Coyote, Desert, or Cactus franchises, until a determination has been made as to the proper calculation of royalty fees and Coyote and Desert's entitlement to royalty rebates under the Franchise Agreements;

(e)     the Plaintiffs to recover their attorneys' fees, costs and expenses against Defendant in an amount to be proven at trial; and

29

(f)    the Court to grant such other and further relief, at law or in equity, as is just and proper.

Respectfully submitted this the _24_ day of July, 2009.

Scott M. Ratchick
Georgia Bar No. 595136
Christopher Scott Badeaux
Georgia Bar No. 030769
Irene B. Vander Els
Georgia Bar No. 033663
HARTMAN, SIMONS, SPIELMAN &
WOOD, LLP
6400 Powers Ferry Road, N.W., Ste 400
Atlanta, Georgia 30339
(770) 955-3555
(770) 858-1097 (facsimile)

Counsel for Plaintiffs

30

**IN THE UNITED STATES DISTRICT COURT** FILED IN CLERK'S OFFICE
**FOR THE NORTHERN DISTRICT OF GEORGIA** U.S.D.C. - Atlanta
**ATLANTA DIVISION**

JUL 2 4 2009

JAMES N. HATTEN, Clerk
By: L.A. Deputy Clerk

COYOTE PORTABLE STORAGE, LLC )
AND )
DESERT PORTABLE STORAGE, LLC, )
)
     *Plaintiffs,* )
) <u>Trial by Jury Demanded</u>
) CIVIL ACTION FILE
vs. ) NO. 1-09-CV-2001
)
PODS ENTERPRISES, INC., AS )
SUCCESSOR IN INTEREST TO )
PODS, INC. )
)
     *Defendant.* )
)

## <u>VERIFICATION</u>

Personally appeared before me, the undersigned officer duly authorized by

law to administer oaths, Lane Moore, Member of the above-named Plaintiffs, who,

having been duly sworn, deposes and states that he has read the Complaint and that

the contents thereof are true and correct.

_____
Lane Moore

Sworn to and subscribed before
me, this 23rd day of July, 2009.

_____
Notary Public
My Commission Expires:

KAREN E DAVIS
NOTARY
EXPIRES
GEORGIA
NOV. 9, 2012
PUBLIC
CARROLL COUNTY

2056914-1 11209.0002000